UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

CORDELIA MILLER,

    Plaintiff,

v.                                            Case No. 2:09-cv-126
                                              HON. R. ALLAN EDGAR

MICHIGAN DEPARTMENT OF
CORRECTIONS,

    Defendant.
_____/

**MEMORANDUM**

Plaintiff Cordelia Miller brings this action against the Michigan Department of Corrections ("MDOC") for alleged violations of the Americans with Disabilities Act, 42 U.S.C. §§ 12101 *et seq.* ("ADA"), the Michigan Persons with Disabilities Civil Rights Act, Mich. Comp. Laws §§ 37.1101 *et seq.* ("MIPDA"), and the Michigan Whistle-blower's Protection Act, Mich. Comp. Laws §§ 15.361 *et seq.* MDOC has moved to dismiss the Plaintiff's complaint pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) claiming that it has immunity pursuant to the Eleventh Amendment to the U.S. Constitution. [Court Doc. No. 3]. Plaintiff has failed to oppose the motion.

The court has reviewed the arguments of the Defendant, the relevant law, and the complaint filed by Plaintiff and has determined that MDOC's motion will be **GRANTED**.

    **I.    Background**

The court will not delve too deeply into the details of Plaintiff's lengthy complaint as any dispute regarding the specific facts is not necessary for resolution of the pending motion. *See*

[Court Doc. No. 1, Complaint]. Plaintiff claims that she is a resident of Michigan who was hired by MDOC to be a registered nurse. Complaint, ¶¶ 1-19. Plaintiff alleges that she began working on October 20, 2008 and performed her job in a competent manner for several months. *Id.* at ¶¶ 19-25. On January 12, 2009 an incident occurred at Plaintiff's workplace that affected her breathing. On that day corrections officers sprayed an unruly inmate with an unknown chemical gas. Plaintiff informed an officer that she often felt sick when exposed to such chemical gases. Another officer, Sergeant Rondo, allegedly suggested that Plaintiff move outside of the building so that she would not be exposed to the gas. *Id.* at ¶ 27. Plaintiff asserts that she still felt the effects of the chemical spray because she was standing downwind from where the gas had been suctioned out of the building and released into the air. As she was treating the inmate who had been exposed to the chemical spray, Plaintiff felt a worsening of her own symptoms. *Id.* at ¶¶ 28-35.

Following the chemical exposure Plaintiff went to the Munising Memorial Hospital and received oxygen there. Complaint, ¶ 40. After Plaintiff was escorted home, she continued to experience difficulty breathing. She then returned to the hospital. *Id.* at ¶¶ 41-42.

Plaintiff's physicians informed her that she needed to wear a surgical mask upon her return to work. Complaint, ¶ 43. Plaintiff claims that MDOC began to discriminate against her in various ways due to her need to wear a surgical mask. *Id.* at ¶¶ 44-56. Following the alleged discrimination, Plaintiff filed a complaint with Michigan's Office of Safety and Health Administration ("MIOSHA"). Following her MIOSHA complaint, Plaintiff allegedly continued to experience employment discrimination, including receiving a reduction in overtime hours. She also alleges that MDOC refused to allow her to wear a surgical mask as requested by her

physician. *Id.* at ¶¶ 56-78. Plaintiff filed a complaint with the Equal Employment Opportunity Commission ("EEOC") in late January of 2009. *Id.* at ¶ 85. Plaintiff claims that on February 20, 2009 MDOC's Human Resources Department requested that she sign a document acknowledging that her requests for accommodation had been denied. *Id.* at ¶ 88.

Following this incident, Plaintiff was injured in her home on February 22, 2009. *Id.* at ¶ 90. At that point the parties continued to experience difficulties pertaining to Plaintiff's need for leave, her prior requested vacation, and MDOC's employment policies. According to the Complaint, MDOC informed Plaintiff that she was terminated on March 5, 2009 for her failure to return to work. Plaintiff alleges that MDOC terminated her due to her disability, and she further claims that she was absent on a pre-approved vacation at the time of her termination. *See* Complaint, ¶¶ 91-113.

Plaintiff's claims arise from MDOC's alleged discriminatory treatment and ultimate termination of Plaintiff from employment. She asserts that MDOC failed to accommodate her disability in violation of the ADA. She seeks damages, attorneys' fees, and punitive damages. MDOC responds that as an agency of the State of Michigan, it has immunity from Plaintiff's ADA claim under the Eleventh Amendment.

**II.     Standard of Review**

**1.     Dismissal Pursuant to Fed. R. Civ. P. 12(b)(6)**

Federal Rule of Civil Procedure 12(b)(6) allows a party to move to dismiss a complaint for failure to state a claim upon which relief can be granted. Fed.R.Civ.P. 12(b)(6). In reviewing a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), a court "must read all well-pleaded allegations of the complaint as true." *Weiner v. Klais and Co., Inc.*, 108 F.3d 86, 88

(6th Cir. 1997) (citing *Bower v. Federal Express Corp.*, 96 F.3d 200, 203 (6th Cir. 1996)). In addition, a court must construe all allegations in the light most favorable to the plaintiff. *Bower*, 96 F.3d at 203 (citing *Sinay v. Lamson & Sessions*, 948 F.2d 1037, 1039 (6th Cir. 1991)).

The Supreme Court has explained "an accepted pleading standard" that "once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S.Ct. 1955, 1969 (2007). The complaint "must contain either direct or inferential allegations with respect to all material elements necessary to sustain a recovery under some viable legal theory." *Weiner*, 108 F.3d at 88 (citing *In re DeLorean Motor Co.*, 991 F.2d 1236, 1240 (6th Cir. 1993)). In *Twombly* the Supreme Court emphasized that:

> [w]hile a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the "grounds" of his "entitle[ment] to relief" requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do, . . . Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact).

550 U.S. at 555, 127 S.Ct. at 1964-65 (citations omitted).

In order to "survive a motion to dismiss under Rule 12(b)(6), a 'complaint must contain either direct or inferential allegations respecting all the material elements to sustain a recovery under some viable legal theory.'" *Advocacy Org. for Patients and Providers v. Auto Club Ins. Ass'n.*, 176 F.3d 315, 319 (6th Cir. 1999) (quoting *Scheid v. Fanny Farmer Candy Shops, Inc.*, 859 F.2d 434, 436 (6th Cir. 1988)).

The Supreme Court has recently clarified that *Twombly* is not limited "to pleadings made in the context of an antitrust dispute." *Ashcroft v. Iqbal*, __ U.S. ___, 129 S.Ct. 1937 (2009).

The Court emphasized that "though *Twombly* determined the sufficiency of a complaint sounding in antitrust, the decision was based on our interpretation and application of Rule 8. That Rule in turn governs the pleading standard 'in all civil actions,' and it applies to antitrust and discrimination suits alike." ___ U.S. at ___, 129 S.Ct. at 1953 (quoting *Twombly*, 550 U.S. at 555-556, 127 S.Ct. 1955). The Court in *Iqbal* indicated the Rule 8 pleading standards that apply to all cases:

> To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'"

*Iqbal*, ___ U.S. at ___, 129 S.Ct. at 1949-50.

### 2. Dismissal Pursuant to Fed. R. Civ. P. 12(b)(1)

Federal Rule of Civil Procedure 12(b)(1) provides:

Every defense to a claim for relief in any pleading must be asserted in the responsive pleading if one is required. But a party may assert the following defenses by motion:
(1) lack of subject-matter jurisdiction; . . . .

Fed. R. Civ. P. 12(b)(1). "When subject matter jurisdiction is challenged under Rule 12(b)(1), the plaintiff has the burden of proving jurisdiction in order to survive the motion." *Madison-Hughes v. Shalala*, 80 F.3d 1121, 1130 (6th Cir. 1996). Further, a district court may "resolve factual disputes when necessary to resolve challenges to subject matter jurisdiction." *Id.*

The Sixth Circuit adheres to the standard of review for Rule 12(b)(1) motions explained

in *Mortensen v. First Federal Savings and Loan Ass'n*, 549 F.2d 884, 890 (3d Cir. 1977):

> The basic difference among the various 12(b) motions is, of course, that 12(b)(6) alone necessitates a ruling on the merits of the claim, the others deal with procedural defects. Because 12(b)(6) results in a determination on the merits at an early stage of plaintiff's case, the plaintiff is afforded the safeguard of having all its allegations taken as true and all inferences favorable to plaintiff will be drawn. The decision disposing the case is then purely on the legal sufficiency of plaintiff's case: even were plaintiff to prove all its allegations he or she would be unable to prevail. In the interests of judicial economy it is not improper to dispose of the claim at that stage. . . .
>
> The procedure under a motion to dismiss for lack of subject matter jurisdiction is quite different. At the outset we must emphasize a crucial distinction, often overlooked between 12(b)(1) motions that attack the complaint on its face and 12(b)(1) motions that attack the existence of subject matter jurisdiction in fact, quite apart from any pleadings. The facial attack does offer similar safeguards to the plaintiff: the court must consider the allegations of the complaint as true. The factual attack, however, differs greatly for here the trial court may proceed as it never could under 12(b)(6) or Fed.R.Civ.Pro. 56. Because at issue in a factual 12(b)(1) motion is the trial court's jurisdiction–its very power to hear the case–there is substantial authority that the trial court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case. In short, no presumptive truthfulness attaches to plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims. Moreover the plaintiff will have the burden of proof that jurisdiction does in fact exist.

*RMI Titanium Co. v. Westinghouse Elec. Corp.*, 78 F.3d 1125, 1134 (6th Cir. 1996) (quoting *Mortensen*, 549 F.2d at 890-91).

**III.     Analysis**

**A.      ADA Claim**

The Eleventh Amendment to the U.S. Constitution states: "The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI. In interpreting the terms of the Eleventh

Amendment, the U.S. Supreme Court has made clear that:

> [a]lthough by its terms the Amendment applies only to suit against a State by citizens of another State, our cases have extended the Amendment's applicability to suits by citizens against their own States. The ultimate guarantee of the Eleventh Amendment is that nonconsenting States may not be sued by private individuals in federal court.

*Board of Trustees of the University of Alabama v. Garrett*, 531 U.S. 356, 364, 121 S.Ct. 955 (2001) (citing *Kimel v. Florida Bd. of Regents*, 528 U.S. 62, 72-73, 120 S.Ct. 631 (2000); *Seminole Tribe of Fla. v. Florida*, 517 U.S. 44, 54, 116 S.Ct. 1114 (1996)) (other citations omitted).

Courts have outlined three exceptions to a State's sovereign immunity pursuant to the Eleventh Amendment. *See Key v. Grayson*, 163 F.Supp.2d 697, 709 (E.D. Mich. 2001). First, it is possible for a state to waive its immunity and consent to suit in federal court. *See id.* (citing *Green v. Mansour*, 474 U.S. 64, 68, 106 S.Ct. 423 (1985)); *see also, Abick v. State of Michigan*, 803 F.2d 874, 876 (6th Cir. 1986); *Pennhurst State School & Hospital v. Halderman*, 465 U.S. 89, 97-99, 104 S.Ct. 900 (1984). However, Michigan as a state has not waived its immunity under the Eleventh Amendment. *See Abick*, 803 F.2d at 877. Further, as an agency of Michigan, MDOC is also protected from suit under the Eleventh Amendment. *See Sims v. Michigan Dep't of Corrections*, 23 F. App'x 214, 215, 2001 WL 1298990 (6th Cir. 2001); *Lee v. Michigan Parole Board*, 104 F. App'x 490, 492, 2004 WL 1532563 (6th Cir. 2004); *Fleming v. Martin*, 24 F. App'x 258, 259, 2001 WL 1176354 (6th Cir. 2001) (relying on MICH. CONST., art. V, § 2 (1963)).

Second, an individual may bring a suit against a state official that seeks injunctive relief to stop future continuing violations of federal law. *See Key*, 163 F.Supp.2d at 709; *Ex Parte Young*, 209 U.S. 123, 167, 28 S.Ct. 441 (1908); *Green*, 474 U.S. at 68, 106 S.Ct. 423. However,

in this action Plaintiff is not seeking injunctive or prospective relief. *See* Complaint. Her Complaint requests only damages, punitive damages, and attorneys' fees.

Third, Congress may validly abrogate the States' immunity under the Eleventh Amendment. *Key*, 163 F.Supp.2d at 709 (citing *Seminole Tribe*, 517 U.S. at 55, 116 S.Ct. 1114). In *Garrett* the Supreme Court considered whether Congress exceeded its authority under the Fourteenth Amendment by making Title I of the ADA applicable to States. 531 U.S. 356, 121 S.Ct. 955. Title I of the ADA prohibits employment discrimination of persons with disabilities. *See Robinson v. University of Akron School of Law*, 307 F.3d 409, 411 n.2 (6th Cir. 2002). Congress clearly intended to abrogate the States' Eleventh Amendment immunity under Title I when it enacted the ADA: "A State shall not be immune under the eleventh amendment to the Constitution of the United States from an action in [a] Federal or State court of competent jurisdiction for a violation of this chapter." *See* 42 U.S.C. § 12202.

In reviewing Congress' authority, the Supreme Court noted that "Congress may abrogate the States' Eleventh Amendment immunity when it both unequivocally intends to do so and 'acts pursuant to a valid grant of constitutional authority.'" *Garrett*, 531 U.S. at 363, 121 S.Ct. 955 (citing *Kimel*, 528 U.S. at 73, 120 S.Ct. 631). The Court reiterated its earlier conclusion that the "'Eleventh Amendment, and the principle of state sovereignty which it embodies, are necessarily limited by the enforcement provisions of § 5 of the Fourteenth Amendment.'" *Id.* at 364, 121 S.Ct. 955 (quoting *Fitzpatrick v. Bitzer*, 427 U.S. 445, 456, 96 S.Ct. 2666 (1976)). It further determined that "the ADA can apply to the States only to the extent that the statute is appropriate § 5 legislation." *Garrett*, 531 U.S. at 364.

The Court initially reviewed its decision in *Cleburne v. Cleburne Living Center, Inc.*, 473

U.S. 432, 105 S.Ct. 3249 (1985) which determined that disability is not a suspect class for purposes of analyzing disparate treatment claims under the Equal Protection Clause. The Court then determined that Title I of the ADA was not applicable to the States and that Congress' attempt to make it so exceeded its authority under § 5 of the Fourteenth Amendment:

> Congressional enactment of the ADA represents its judgment that there should be a "comprehensive national mandate for the elimination of discrimination against individuals with disabilities." 42 U.S.C. § 12101(b)(1). Congress is the final authority as to desirable public policy, but in order to authorize private individuals to recover money damages against the States, there must be a pattern of discrimination by the States which violates the Fourteenth Amendment, and the remedy imposed by Congress must be congruent and proportional to the targeted violation. Those requirements are not met here, and to uphold the Act's application to the States would allow Congress to rewrite the Fourteenth Amendment law laid down by this Court in *Cleburne*. Section 5 does not so broadly enlarge congressional authority.

*Garrett*, 531 U.S. at 374, 121 S.Ct. 955.

Following *Garrett* the Sixth Circuit has consistently barred claims for money damages under Title I of the ADA. *See e.g., Swanson v. University of Cincinnati*, 268 F.3d 307, 313 (6th Cir. 2001); *Dillon-Barber v. Regents of University of Michigan*, 51 F. App'x 946, 949 (6th Cir. 2002); *Mayers v. Campbell*, 87 F. App'x 467, 471, 2003 WL 23140061 (6th Cir. 2003). In this action Plaintiff seeks money damages for violation of Title I of the ADA based on her employment with MDOC. Plaintiff has failed to oppose the motion to dismiss or provide any legal argument regarding why MDOC should not be immune from Plaintiff's Title I ADA claims pursuant to the Eleventh Amendment. MDOC is an agency of the state of Michigan subject to Michigan's Eleventh Amendment immunity. Further, Michigan has not waived its Eleventh Amendment immunity. Nor is Plaintiff seeking future injunctive relief. Therefore, this court concludes that *Garrett* clearly applies and requires a finding that the Eleventh Amendment

provides sovereign immunity to MDOC for Plaintiff's ADA claim. MDOC's motion to dismiss will be **GRANTED**.

      B.      **State Law Claims**

Plaintiff also brings claims pursuant to the Michigan's Whistle-blower's Protection Act and the MIPDA. District courts have supplemental jurisdiction over state law claims "that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a). However, "[t]he district courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) if – . . . (3) the district court has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3). A district court is "acting well within its rights when it refuse[s] to exercise supplemental jurisdiction over the remaining state law claims against" a defendant. *Friends of Tims Ford v. Tennessee Valley Authority*, __ F.3d __, 2009 WL 3673063 *11 (6th Cir. 2009). In addition, "'[i]f the federal claims are dismissed before trial, the state claims generally should be dismissed as well.'" *Brooks v. Rothe*, 577 F.3d 701, 709 (6th Cir. 2009) (quoting *Wojnicz v. Davis*, 80 F. App'x 382, 384-85 (6th Cir. 2003)). District courts must consider such factors as "judicial economy, convenience, fairness, and comity" and the avoidance of unnecessarily deciding state law when determining whether to exercise supplemental jurisdiction. *Pinney Dock & Transp. Co. v. Penn Cent. Corp.*, 196 F.3d 617, 620-21 (6th Cir. 1999); *Fossyl v. Milligan*, 317 F. App'x 467, 473 (6th Cir. 2009). In addition, when the "balance of these factors indicates that a case properly belongs in state court, as when the federal-law claims have dropped out of the lawsuit in its early stages and only state-law claims remain, the federal court should decline the exercise of jurisdiction by dismissing the case without

prejudice." *Fossyl v. Milligan*, 317 F. App'x at 473 (quoting *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350, 108 S.Ct. 614 (1988)).

The court has concluded that dismissal of Plaintiff's only federal claim, her ADA claim, is appropriate. Therefore, it is also appropriate for this court to decline to exercise supplemental jurisdiction over the remaining state law claims. The dismissal of this case occurs early in the proceedings on a motion to dismiss pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). The only remaining claims are state law claims; therefore, this court declines to exercise supplemental jurisdiction over these claims and will **DISMISS** them without prejudice.

**IV.    Conclusion**

As discussed *supra*, the court concludes that MDOC has sovereign immunity from Plaintiff's Title I ADA claim pursuant to the Eleventh Amendment. Therefore, this claim will be **DISMISSED** with prejudice. Further, the court will decline to exercise supplemental jurisdiction over the remaining state law claims pursuant to 28 U.S.C. § 1367(c)(3). Plaintiff's claims under the Michigan Whistleblower's Act and the MIPDA will be **DISMISSED** without prejudice.

A separate judgment will enter.


Dated: 12/9/09                                  /s/ R. Allan Edgar
                                                R. ALLAN EDGAR
                                                UNITED STATES DISTRICT JUDGE